UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES and BURLINGTON NORTHERN SYSTEM FEDERATION OF BMWE,

Plaintiffs,

v.

BURLINGTON NORTHERN AND SANTA FE RAILROAD COMPANY, suing as BURLINGTON NORTHERN SANTA FE RAILROAD,

Defendant.

01 CIV 01437 DDA/SRN

**ORDER**

Brotherhood of Maintenance of Way Employees and Burlington Northern System Federation of BMWE by CHARLES A. COLLINS of St. Paul, Minnesota and WILLIAM A. BON of Southfield, Michigan.

Burlington Northern and Santa Fe Railway Company by PATRICK J. SWEENEY and RODNEY A. HONKANEN of St. Paul, Minnesota and DAVID M. PRYOR and CHARLES W. SHEWMAKE of Fort Worth, Texas.

This matter is before the Court upon the parties' cross motions for summary judgment. For reasons stated herein, the Court will deny the plaintiff's motion and grant the defendant's motion.[1]

## I. BACKGROUND

M.L. Bourgeois ("Bourgeois") worked for Burlington Northern and Santa Fe Railroad ("BNSF" or "the Railroad") in a craft represented by Brotherhood of Maintenance of Way Employees ("BMWE" or "the Union"). A collective bargaining agreement ("CBA") exists between the parties, and the dispute is governed by the Railway Labor Act ("RLA"). The

[1] In Footnote 1 on Page 2 of Defendant's Response to Petitioner's Motion for Summary Judgment, the defendant requests that the Court strike plaintiff's Exhibit 1. Because the defendant's motion for summary judgment will be granted, it is unnecessary to rule on the motion to strike.

FILED JUN 17 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD JUN 17 2002
DEPUTY CLERK

dispute arises out of an incident that occurred on November 4, 1994. On that date, Bourgeois purchased a grinding wheel for personal use, but the Railroad's account was charged for the purchase. The Railroad discharged Bourgeois following an investigation. The Union appealed via internal channels, and then appealed to the National Railroad Adjustment Board ("the Board"), as required by the RLA.

The Board held that the Railroad had not met its burden of proving that Bourgeois had committed theft. It ordered him reinstated with back pay and benefits. A dispute then arose over the award issued by the Board. The Railroad's contention, with which the Union disagreed, was that it was entitled to set-off against back pay, interim wages Bourgeois earned from any other employers during the appellate process. The CBA is silent as to the set-off issue.[2] Unable to agree, the parties submitted the issue to the Board for interpretive guidance. In Interpretation No. 1 to Award No. 32485 (Jan. 24, 2000), the Board held that the issue of a set-off for interim earnings was properly before it and that a set-off was appropriate. The Union now petitions this Court for an Order vacating Interpretation No. 1 on the grounds that the award exceeded the Board's jurisdiction.

## II. DISCUSSION

Summary judgment is appropriate if no genuine issue of material fact exists and if the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Fed. R. Civ. P. 56(c). The test for whether there is a genuine issue of material fact is two-fold. First, the materiality of a fact is determined from the substantive law governing the claim. Only disputes over facts that might affect the outcome of the suit are relevant on summary judgment. Liberty Lobby, 477 U.S. at 252. Second, any dispute of

---

[2] The CBA provides: "If it is found that an employee has been unjustly disciplined or dismissed, such discipline shall be set aside and removed from the record. He shall be reinstated with his seniority rights unimpaired, and be compensated for wage loss, if any, suffered by him, resulting from such discipline or suspension." Collective Bargaining Agreement at ¶ 40(g).

material fact must be "genuine". A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Id. The parties agree that there are no genuine issues of material fact regarding the motions now before the Court and that the issue is solely one of law.

The scope of judicial review of board awards under the RLA is among the narrowest known to law. Goff v. Dakota, Minnesota & Eastern R.R. Corp., 276 F.3d 992, 995 (8th Cir. 2002); Int'l Assoc. of Machinists v. Northwest Airlines, Inc., 858 F.2d 427, 429 (8th Cir. 1988) (citations omitted). An award is enforceable as within the scope of a board's jurisdiction unless it is "without foundation in reason or fact". Int'l Assoc. of Machinists, 858 F.2d. at 430 (citations omitted). Courts may set aside board orders on three grounds: 1) failure to comply with RLA requirements; 2) failure of the order to confine itself to matters within the scope of the board's jurisdiction; and 3) fraud or corruption. Id. at 429 (citing 45 U.S.C. §153 First (q); Union Pac. R.R. v. Sheehan, 439 U.S. 89, 93 (1978) (per curiam); Bhd. of Ry., Airline & Steamship Clerks v. Kansas City Terminal Ry. Co., 587 F.2d 903, 905-906 (8th Cir. 1978), cert. denied, 441 U.S. 907 (1979)). The second ground for setting aside a board order, jurisdiction, is at issue in the instant case.

The Union argues that the Railroad did not specifically raise the set-off issue "on the property" and, therefore, that the Board acted outside the boundaries set forth by the parties' submissions in granting a set-off. In response, the Railroad contends that the issues of remedy and back pay, which were part of the submissions, encompassed the set-off issue. Once the parties have submitted an issue to an arbiter, the Court "must look both to their contract and to the submission of the issue to the arbitration" to determine the arbiter's authority. John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, 913 F.2d 544, 561 (8th Cir. 1990), cert. denied, 500 U.S. 905 (1991) (quoting Piggly Wiggly Operators' Whse. v. Piggly Wiggly Operators' Whse. Indep. Truck Drivers Union Local No. 1, 611 F.2d 580, 584 (5th Cir. 1980)). A board does not exceed the scope of the arbitration

submissions "as long as it confines itself to the areas marked out for its consideration". Int'l Assoc. of Machinists, 858 F.2d at 432 (citations omitted). Thus, the question before this Court is whether the Board confined itself to the areas marked out for consideration in awarding a set-off.

An issue similar to that which is currently before the Court was addressed by the Eighth Circuit Court of Appeals in Int'l Assoc. of Machinists, 858 F.2d at 427. In that case, the Court of Appeals considered whether the Board exceeded its jurisdiction in awarding a penalty where the Union did not request a penalty in its submissions, and where the CBA did not specifically authorize punitive damages. The Court held that "the Board imposed a penalty to ensure that Northwest would comply with the letter. Although the Union had not specifically requested a penalty, it did request that Northwest comply with the agreement." Id. at 432. In other words, compliance and the application of a penalty to enforce compliance were so closely linked that a penalty did not constitute a new, separate issue. The Court finds such reasoning to be applicable in the instant case. While set-off specifically had not been raised in the submissions, the closely-related issues of remedy and back pay had been.

The Union relies on John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, 913 F.2d at 544, in support of its argument. The Court finds that John Morrell & Co. is distinguishable from the instant case. In that case, the Eighth Circuit Court of Appeals held that the board exceeded its jurisdiction by failing to stay within the issue submitted for consideration. The issue before the arbitrator involved the application of collective bargaining agreement seniority and discrimination provisions to employees who had been on strike, and the arbitrator instead addressed the meaning of the no-strike clause, an entirely different issue. In addition, whereas in the instant case the submissions were silent as to the set-off issue, in John Morrell & Co, there was a great deal of evidence that the parties did *not* intend for the arbitrator to address the no-strike clause. See id.

Citing Bhd. of R.R. Signalmen v. Chicago, Milwaukee, St. Paul and Pac. R.R. Co., Award No. 14162 (Dec. 19, 1968) (Dorsey, R.), the Union also argues that discrepancies exist among various board awards regarding whether a board has jurisdiction to address the set-off issue if set-off is not specifically raised in the submissions. In the instant case, the Board acknowledged this in its award when it stated that "[u]nfortunately, the authority relied upon by the parties is hopelessly in conflict and seemingly irreconcilable even to the point that individual referees are not always consistent over time." Interpretation No. 1 to Award No. 32485 at 2. However, the Court's role in regard to this issue is not to reconcile conflicting awards, but to determine if the Board, in the instant case, confined itself to the areas marked out for its consideration. As in Int'l Assoc. of Machinists, the Court finds that it did so confine itself. See Int'l Assoc. of Machinists, 858 F.2d. at 427.[3]

---

[3] In determining that it had jurisdiction to reach the set-off issue, the Board reasoned:

> [A]ny request for a remedy to an improper discharge is by definition a demand that the employee be placed in the position he or she would have enjoyed had he or she not [been] discharged . . . . [W]e do not believe that a dispute over this issue, which is not ripe until the claim is sustained, constitutes "new" evidence and therefore does not undermine the finality or the stability of the original resolution of the claim. Moreover, to rule otherwise would require that in every discipline case the Carrier would be required to raise the issue, not only before the Board, but conceivably at the Hearing, in order to make the record on the claim and to preserve the claim for eventual resolution. This would be true because if it failed to do so the Organization could then argue that there had been surprise or prejudice. We do not believe that any such process would lead to stable labor relations and claim processing and could lead to just the opposite result.

Interpretation No. 1 to Award No. 32485 at 3.

The parties also debate whether the Board exceeded its jurisdiction in ordering a set-off since the CBA is silent as to set-off. The "test of the Board's jurisdiction is not whether the reviewing Court agrees with the Board's interpretation of the bargaining contract, but whether the remedy fashioned by the Board is rationally explainable as a logical means of furthering the aims of that contract." Bhd. of Ry., Airline and Steamship Clerks, 587 F.2d at 906-907 (quoting Diamond v. Terminal Ry. Alabama State Docks, 421 F.2d 228, 233 (5th Cir. 1970)). Under this extremely deferential standard, the Court considers whether the award "draw[s] its essence from the collective bargaining agreement." Int'l Assoc. of Machinists, 858 F.2d at 430 (citing Walsh v. Union Pac. R.R. Co., 803 F.2d 412, 414 (8th Cir. 1986), cert. denied, 482 U.S. 928 (1987)). In determining if the Board exceeded its authority, "the agreement must be broadly construed with all doubts resolved in favor of the [Board's] award." Union Pac. R.R. Co. v. United Transp. Union, 23 F.3d 1397, 1399 (8th Cir. 1994) (quoting Walsh, 803 F.3d at 414). Industry "[c]ustom and practice . . . are valid bases for fashioning remedies where the contract does not explicitly exclude them." Int'l Assoc. of Machinists, 858 F.2d at 432 (quoting Bhd. of R.R. Trainmen v. Central of Georgia Ry, 415 F.2d 403, 416 (5th Cir. 1969)). The Board is afforded wide latitude in formulating remedies. Walsh, 803 F.3d at 414 (citations omitted).

In the instant case, the Board explained its reason for granting a set-off as follows:

> The basis for . . . [the set-off] is again to consider what circumstances the Claimant would have encountered had the discharge not taken place. Clearly, in that case he or she would have continued to work and therefore the Carrier is liable for the earnings, accrual of seniority, and application of benefits that the Claimant would have enjoyed but for the discharge. By the same token had the Claimant not been improperly discharged, he or she would not have found concurrent employment. Therefore, the earnings from that employment should serve as a set-off to the Carrier's liability.
>
> It is true, as the Organization argues, that neither the claim nor the parties' Agreement provides for any set-off. However, there is nothing in the Agreement that prohibits any set-off and therefore, the rules of logic prevail.

Interpretation No. 1 to Award No. 32485 at 3. It is clear that the Board intended to make Bourgeois "whole", but avoid awarding him a windfall, which is accomplished by allowing a set-off. Given that nothing in the CBA prohibits a set-off, the Court cannot find that the remedy fashioned by the Board is "without reason or fact" or that the remedy is not "rationally explainable as a logical means of furthering the aims of that contract." See Union Pac. R.R. Co. v. United Transp. Union., 23 F.3d at 1399; Walsh, 803 F.2d at 415. Moreover, the Court is satisfied that, in general, current railroad industry practice favors mitigation of damages. See, e.g., Bhd. Maintenance of Way Employees v. Burlington Northern Santa Fe, Public Law Board No. 6204 (Oct. 10, 2001); Bhd. of Maintenance of Way Employees v. Soo Line RR. Co., Interpretation No. 1 to Award No. 28159 (Feb. 28, 1991). Therefore, the Court finds that the award draws its essence from the collective bargaining agreement.

Accordingly, upon review of the files and motions,

**IT IS HEREBY ORDERED** that:

1. The plaintiffs' motion for summary judgment is **DENIED**;
2. The defendant's motion for summary judgment is **GRANTED**; and
3. The Clerk of Court shall enter judgment as follows:

> **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the plaintiffs' Petition for an order vacating the arbitrator's Interpretation No. 1 to Award No. 32485 and remanding the controversy to the Third Division of the NRAB is DENIED.
>
> **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the plaintiffs' Petition is DISMISSED.

DATED: June 17, 2002.

DONALD D. ALSOP, Senior Judge
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*